IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRIAN LEE PARKER,<br><br>    Petitioner,<br><br>  v.<br><br>LARRY SMALL and EDMUND G. BROWN,<br><br>    Respondents.<br>_____/ | No. C 09-03989 WHA<br><br>**ORDER DENYING PETITION<br>FOR WRIT OF HABEAS CORPUS** |

## INTRODUCTION

This action concerns a petition for writ of habeas corpus originally filed pro se pursuant to 28 U.S.C. 2254. Respondents were ordered to show cause why the writ should not be granted based on four claims in the petition. Respondents filed an answer and a memorandum of points and authorities to support it. Petitioner acquired and the Court granted substitution of counsel, and petitioner filed a traverse. For the reasons set forth below, the petition is **DENIED**.

## STATEMENT

Petitioner was charged in California state court with murder (Cal. Pen. Code § 187(a)), robbery (§ 212.5(a)), burglary (§ 460(a)), shooting into an occupied dwelling (§ 246), assault with a firearm (§ 245(a)(2)), possession of a firearm by a felon (§ 12021.1(a)(1)), that the murder was committed in the commission of a robbery and a burglary (§ 190.2(a)(17)(a) and (g)), that petitioner personally discharged a firearm (§ 12022.53(d)), that he personally used a firearm (§ 12022.5(a)), that he inflicted great bodily injury (§ 12022.7(a)), that he has suffered two prior serious felony convictions (§ 667(a)) and that he had served a prior prison term (§

667.5(b)). Petitioner was convicted of these charges. The trial court sentenced him to life without the possibility of parole for murder, a consecutive term of 25 years to life for personally discharging a firearm, a consecutive seven-year term for shooting into an inhabited dwelling, and a consecutive five-year term for the prior serious felony enhancement.

The following is drawn from the opinion of the California Court of Appeal (Exh. F, *People v. Parker*, No. A113563, 2008 WL 1952341 (Cal. Ct. App. May 6, 2008)). On April 10, 2003, around 7:00 p.m., 12-year-old Alberto G. was sitting on the stairs outside his apartment unit in East Palo Alto. He saw two men wearing masks enter the nearby apartment of Kenneth "Kiki" Hamel. Soon thereafter he heard a woman scream and saw the men run from the apartment. At the same time, Katie Williams, age 71, was sitting on her couch in the apartment adjacent to Hamel's apartment. She suddenly felt like she had been shot and looked down to see blood coming from her stomach. Williams ran from her apartment to that of the building manager, Frank Jenkins, who called 911. Jenkins recalled hearing two cracking sounds in quick succession shortly before Williams sought his help. Within seconds, he ran out of his apartment to the building walkway and saw two men coming quickly towards him, one wearing dark clothing and a mask over his face, and the other a shorter, heavier unmasked African-American man. In a police photo lineup Jenkins later identified Clarke (petitioner's co-defendant) as the unmasked man.

At the crime scene, investigators found Hamel on the couch in his apartment, without a pulse, bleeding from the mouth, and with a gunshot wound to the abdomen. They recovered 271 grams of marijuana, 52 grams of cocaine, drug paraphernalia, several thousand dollars in cash, and a handgun behind the couch. Officers also located what appeared to be a bullet hole through the wall that separated the apartments of Hamel and Williams. An autopsy revealed Hamel had been shot with four bullets. The lethal bullet entered the upper left side of his chest, severely tearing the heart tissue. Nonlethal but debilitating bullets entered his shoulder blade, left chest and lung, and upper abdomen. Williams sustained a single, potentially lethal gunshot wound to the abdomen.

According to witnesses Erika Geilfuss, William Mines, and Amanda Martin, early in the evening on April 10, 2003, petitioner and Clarke arrived at Geilfuss's house and admitted killing Hamel. Geilfuss testified that on the evening of April 10, she, her boyfriend Mines, and Martin were in front of her house when petitioner and Clarke arrived. Clarke told her that "[t]hey went to go rob somebody and the guy ended up getting killed." Clarke explained he and petitioner had been involved in a robbery, and that petitioner shot the intended target three times when the man produced a gun. Clarke tried to shoot too, but his gun had jammed. They had expected to collect about $90,000, but instead collected a mere $27 and some change.

Geilfuss sought advice from a friend who is a dispatcher with California Highway Patrol. With the friend's help, Geilfuss came in contact with Detective Craig Denton, and under his direction police recovered a .357 handgun from a hole in Geilfuss's yard, where Geilfuss thought the murder weapon had been buried. Mines's testimony regarding the evening of April 10 was similar to Geilfuss's. Around 8:30 p.m. on April 10, Clarke and petitioner arrived at Geilfuss's house. Clarke told Mines that petitioner had killed a man during a robbery when the man reached for a gun as they entered his apartment. Mines saw that Clarke had a 9 millimeter automatic gun and petitioner had a .357 magnum revolver. Mines hid Clarke's 9 millimeter gun in a safe at the house. At petitioner's request, Mines buried the .357 handgun, which he was told was the murder weapon, in the backyard. Petitioner later retrieved the 9 millimeter gun from the safe.

A few days later the police questioned Clarke and Mines about the murder. Mines initially refused to cooperate. Mines learned later that evening from Clarke that the police had recovered the gun from the yard. On July 31, Denton met Mines at his house and told him that Clarke had confessed. By that time Mines also knew that petitioner had been arrested and that the police knew he had buried the weapon. Mines then told them what he knew because "[he] wanted to be left alone. [He] wanted out of the situation." He later entered a no contest plea to the charge of accessory after the fact of a murder, for burying the gun in the backyard. Under the terms of the plea agreement, Mines was promised no state prison sentence if he cooperated fully and truthfully in subsequent prosecutions.

3

After entering the plea, Mines admitted for the first time that petitioner and Clarke had, days before April 10, asked him to participate in a robbery of a drug dealer. Petitioner and Clarke told Mines they would be armed, and that he should bring a shotgun. They expected to collect over $70,000. Mines agreed to participate, but Clarke later informed Mines that they would commit the robbery alone because petitioner did not know Mines well enough to include him in the plan. Martin testified that she had known Clarke since 2000. According to Martin, both men appeared "amped like wiry, edgy" when they arrived at Geilfuss's house. Clarke said "he and Brian killed somebody" and described the crime as a "robbery gone bad." He threw a gun and some change on the bed. She also saw Clarke try to "unjam" the gun.

The California Court of Appeal affirmed the conviction and sentence on May 6, 2008. The California Supreme Court denied petitioner's petition for review on August 13, 2008 (Exh. G). Petitioner filed the instant federal habeas petition on August 7, 2009. The respondents' answer and memorandum of points and authorities in support thereof were filed on January 12, 2010. An order approved substitution of counsel for petitioner on February 8, 2010. Petitioner filed a traverse on August 25, 2010.

**ANALYSIS**

**A.   STANDARD OF REVIEW**

A district court may not grant a petition challenging a state conviction or sentence on the basis of a claim that was reviewed on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. 2254(d). The first prong applies both to questions of law and to mixed questions of law and fact, *Williams (Terry) v. Taylor*, 529 U.S. 362, 407–409 (2000), while the second prong applies to decisions based on factual determinations. *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

4

A state court decision is an "unreasonable application of" Supreme Court authority, such that it falls under the second clause of Section 2254(d)(1), if it correctly identifies the governing legal principle from the Supreme Court's decisions but "unreasonably applies that principle to the facts of the prisoner's case." *Williams (Terry)*, 529 U.S. at 413. A writ may not issue "simply because [the] court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411. Rather, the application must be "objectively unreasonable" to support granting the writ. *Id.* at 409. The state court decision to which Section 2254(d) applies is the "last reasoned decision" of the state court. *See Ylst v. Nunnemaker*, 501 U.S. 797, 803–04 (1991).

**B.    ISSUES PRESENTED**

As grounds for federal habeas relief, petitioner asserts that: (1) the admission of Mines's testimony violated petitioner's right to due process; (2) the trial court's instruction to the deadlocked jury was coercive and thus violated petitioner's constitutional rights; (3) the trial court's supplemental jury instruction on reasonable doubt violated petitioner's due process rights because it did not include an additional instruction on the presumption of innocence; and (4) the imposition of an upper term sentence violated petitioner's right to a jury trial under *Cunningham v. California*, 549 U.S. 70 (2007).[*]

   **1.    Admission of Mines's Testimony**

Petitioner argues that the state court's decision was "an unreasonable application of, clearly established Federal law" — as set out by the Supreme Court — that the admission of coerced testimony violates a defendant's due process rights (Br. 16 (citing *Jackson v. Denno*, 378 U.S. 368, 385–86 (1964)). *First*, the state court of appeal found that the "testimony does not support [the] claim that Mines's confession was the product of an improper threat of arrest. At most, the record reflects that [the officer's] comments gave Mines the impression that he might be arrested" (Exh. F, 2008 WL 1952341, at *4). Petitioner has not pointed to clear and

---

[*] Petitioner also purported to state a fifth claim concerning the state trial court's review of petitioner's prison and medical records, but as this Court's order to show cause stated, "this request does not seek habeas relief insofar as it does not challenge the fact or duration of petitioner's custody" (Dkt. No. 4 at 2 n.1).

1 convincing evidence to the contrary. Mines helped petitioner hide the murder weapon and was
2 lying to police. The state court of appeal held that any influence in presenting Mines with his
3 predicament did not constitute coercion. This was not an unreasonable application of federal
4 law.

5 *Second*, the state court found that there was even less reason to think that Mines's
6 testimony at petitioner's trial, several years later, was coerced. It stated, "nothing in this record
7 supports [the] claim that any limited pressure from the threat of prosecution infected Mines's
8 testimony almost three years later" (*id.* at *5). Again, petitioner does not point to any clear and
9 convincing evidence to the contrary or cite anything in support of his argument that the
10 resulting legal conclusion that there was no coercion was unreasonable under 28 U.S.C.
11 2254(d)(1).

### 2. **Deadlocked Jury Instruction**

13 Petitioner fails to cite any Supreme Court decision to support his argument that the state
14 trial court's deadlocked jury instruction violated his constitutional rights. He thus does not
15 demonstrate that the state court of appeal's decision was "contrary to" or "an unreasonably
16 application of" Supreme Court precedent.

17 Petitioner instead argues that the state court's decision was contrary to a decision of the
18 Court of Appeals for the Ninth Circuit: *United States v. Sea-Chua*, 725 F.2d 530 (9th Cir.
19 1984). Though the proper inquiry is whether the state court of appeal's decision is contrary to
20 Supreme Court precedent, *Williams (Terry)*, 529 U.S. at 412, the Court of Appeals for the Ninth
21 Circuit was interpreting Supreme Court authority in *Sea-Chua*. Accordingly, using *Sea-Chua*
22 as our guide to determine whether the state court's decision was an "unreasonable application
23 of" Supreme Court precedent, petitioner's claim fails. The relevant Supreme Court decision is
24 *Allen v. United States*, and its progeny, pursuant to which a court may instruct the jury to
25 continue deliberating so long as the instruction is not coercive. 164 U.S. 492, 501 (1896). The
26 California Court of Appeal made a reasonable determination to distinguish the situation
27 presented in *Sea-Chua*. There, the trial court knew specifically which juror was the dissenting
28 juror when it gave the deadlocked jury instruction, and the court of appeals held that giving the

6

1 instruction under those circumstances was coercive, because the dissenting juror "could hardly
2 escape reasoning . . . that he, individually, was being urged by the judge to reconsider his vote."
3 *Sea-Chua*, 725 F.2d at 532.

4 Here, the trial court judge knew that there was one dissenting juror, but did not know
5 which juror it was. The state court of appeal held that "despite the unfortunate disclosure of
6 how the jury was divided, the trial court did not err in instructing the jury to continue its
7 deliberations" (Exh. F, 2008 WL 1952341, at *8). As cited by the state court of appeal, the
8 decision of *United States v. Lorenzo*, 43 F.3d 1303 (9th Cir. 1995), is in fact closer to the
9 circumstances of this case than *Sea-Chua*. In *Lorenzo*, the court was advised that there was one
10 dissenting juror, but not which juror it was. *Id.* at 1307. There the court found a deadlocked
11 jury instruction proper. *Ibid.* The California Court of Appeal was not unreasonable in its
12 application of federal law concerning the deadlocked jury instruction.

13      **3.**     **Supplemental Reasonable Doubt Instruction**

14 Petitioner next claims that the state trial court violated his constitutional due process
15 rights by failing to give a supplemental instruction concerning the presumption of innocence
16 when it gave a further instruction defining reasonable doubt.

17 California's reasonable doubt instruction, CALJIC 2.90, was found constitutionally fit in
18 *Lisenbee v. Henry*, 166 F.3d 997, 999–1000 (9th Cir. 1999) (use of term "abiding conviction" in
19 defining reasonable doubt is constitutionally sound). And as petitioner himself acknowledges,
20 "due process does not mandate the use of the phrase 'presumption of innocence'" (Br. 30
21 (citations omitted)). Nevertheless, the CALJIC 2.90 instruction was given, and it included the
22 following language: "A defendant in a criminal action is presumed to be innocent until the
23 contrary is proved" (Exh. A at 665). Petitioner continues to object, however, that the state trial
24 court should have given a supplemental instruction on the presumption of innocence when it
25 gave a supplemental instruction on reasonable doubt in response to a question from the jury.

26 The California Court of Appeal held that "[t]he supplemental instruction was reasonably
27 limited" (Exh. F, 2008 WL 1952341, at *9). *The trial court had already given an instruction*
28 *concerning the presumption of innocence.* Moreover, the original instruction was referenced by

7

1  the supplemental instruction defining reasonable doubt (Exh. A at 748–49 ("You may consider
2  this in connection with the original reasonable doubt instruction.")).  Juries are presumed to
3  follow instructions, and instructions are not to be viewed in isolation.  *See Estelle v. McGuire*,
4  502 U.S. 62, 72 (1991).  The law does not require redundant jury instructions.  The state court
5  of appeal's decision that the trial court's jury instructions were proper was not "an unreasonable
6  application of" Supreme Court precedent.

### 4. Upper Term Sentence Without Jury Finding

Petitioner argues that "the sentencing judge imposed an upper term sentence which included reliance on factors that under Cunningham [sic] had to be submitted to a jury and proved beyond a reasonable doubt" (Br. 34).  Those "factors" were prior convictions of voluntary manslaughter and possession of a firearm when previously convicted of a felony.

*Cunningham* itself states that the jury right in determination of sentencing enhancements does not apply to determination of prior convictions.  *Cunningham v. California*, 549 U.S. 270, 274–75 (2007).  Recidivism and prior convictions increasing the maximum penalty need not be charged to comport with the constitutional right to fair notice because they are not considered an element of the offense charged.  *See Almendarez-Torres v. United States*, 523 U.S. 224, 243–44 (1998).

The California Court of Appeal did not address the merits of petitioner's argument now asserted, but instead stated:

> In his reply, [defendant] acknowledges that after the filing of his opening brief the California Supreme Court decided *People v. Black* (2007) 41 Cal.4th 799 (*Black II*), the holding of which would require that we uphold his sentence.  We are bound by the Supreme Court decision and therefore will not consider his argument 'that *Black II*'s 'single factor eligibility test' contravenes *Cunningham*.'

(Exh. F, 2008 WL 1952341, at *10 n.4.)  If a state court only considers state law, a federal court considering a habeas petition must ask whether state law is "contrary to" clearly established governing federal law.  *See Lockhart v. Terhune*, 250 F.3d 1223, 1230 (9th Cir. 2001).  If the state law is consistent with clearly established governing federal law, the federal court must ask whether the state court applied that law unreasonably to the facts.  *See id.* at 1232.

8

The California Supreme Court's holding in *Black* that "determinations whether a defendant has suffered prior convictions . . . 'is [sic] one more typically and appropriately undertaken by a court,'" 41 Cal.4th at 819–20 (citation omitted) — which the state court of appeal applied in this case — is not contrary to federal law as articulated by the Supreme Court. The above review demonstrates their consistency. Accordingly, the state trial court's imposition of an upper term sentence without submitting the factor it depended on to a jury was not "an unreasonable application of, clearly established Federal law." 28 U.S.C. 2254(d)(1).

## CONCLUSION

The petition for a writ of habeas corpus is **DENIED**.

Rule 11(a) of the Rules Governing Section 2254 Cases now requires a district court to rule on whether a petitioner is entitled to a certificate of appealability in the same order in which the petition is denied. Petitioner must make a substantial showing that his claims amounted to a denial of his constitutional rights or demonstrate that a reasonable jurist would find this Court's denial of his claim debatable or wrong. *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). He has failed to do so for his claims concerning the admission of Mines's testimony, the supplemental jury instruction on reasonable doubt, and the imposition of an upper term sentence. But he has done so for his claim that the trial court's deadlocked jury instruction was coercive. Consequently, a certificate of appealability is granted solely as to the deadlocked jury instruction claim.

The clerk shall close the file.

**IT IS SO ORDERED.**

Dated: September 2, 2010.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

9